Estate of Mary Harvey, deceased.    Appeal of Hannah Harvey Daly.

*Will—Devisavit vel non—Evidence.*

In an application for an issue, if the testimony is such that after a fair and impartial trial resulting in a verdict against the proponent of the alleged will, the trial judge, after a careful review of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence, it cannot be said that a dispute within the meaning of the act has arisen; but if the state of the evidence is such that the trial judge would not feel constrained to set aside the verdict, the dispute should be considered substantial, and an issue should be directed.

*Will—Issue devisavit vel non—Undue influence.*

An issue devisavit vel non to determine whether a will was made under undue influence will not be granted where the evidence shows that, while there were some circumstances of a suspicious nature, the will was not drawn by the principal beneficiary, but by an attorney; that the principal beneficiary was not present when it was written, and had no knowledge of its contents until some days after its execution; that she did not solicit the execution of the will, or do anything in procuring the provision therein in her favor, or use any deception, artifice or undue influence to prejudice testatrix against her other children.

Argued April 26, 1897.   Appeal, No. 523, Jan. T., 1896, by
Hannah Harvey Daly, from decree of O. C. Crawford Co.,
Sept. T., 1894, No. 36, refusing an issue devisavit vel non.
Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.   Affirmed.

Appeal from register of wills admitting will to probate.

HENDERSON, P. J., filed the following opinion :

The petition of the contestant asks for an issue to determine,
first: whether testator was of sound, disposing mind, memory
and understanding at the time of the execution of the will in
question, and second : whether the said will was not procured
by undue influence.

Mary Harvey lived in the city of Titusville, and died there
on the 26th day of December, 1893.   At the time of her death
she was about seventy-eight years of age.   She left to survive
her, two sons, William and Thomas, and two daughters, Jane
and Hannah, all of whom were in mature life.   Jane was a
widow, having nine children.   Hannah was married to one
Daly.   On the 14th of December, 1893, the will in question
was executed, and ·on the 18th of the same month a codicil
thereto.   It is alleged by the contestant that at the date of
the execution of the will and codicil, the decedent was not of
sound and disposing mind and memory, and that the will was
executed as the result of undue influence exercised by the
daughter, Jane Kelly.   A careful examination of the large vol-
ume of evidence presented fails to discover any evidence in
support of the allegation of undue influence.   The rule stated
in Tawney v. Long, 76 Pa. 115, is this : "Undue influence, of
that kind which will affect the provisions of a testament, must
be such as subjugates the mind of the testator to the will of the
person operating upon it ; and, in order to establish this, proof
must be made of some fraud practiced, some threats or misrep-
resentations made, some undue flattery or some physical or
moral coercion employed, so as to destroy the free agency of
the testator; and these influences must be proved to have oper-
ated as a present constraint, at the very time of making the
will."   In Herster v. Herster, 122 Pa. 239, Mr. Justice CLARK
stated the rule to be this : "Undue influence exists wherever

through weakness, ignorance, dependence or implicit reliance of one on the good faith of another the latter obtains an ascendency which prevents the former from exercising an unbiased judgment, and to affect a will it must, in a measure at least, destroy free agency, and must operate on the mind of the testator at the time of making the will." Applying this rule to the case under consideration, it is apparent that the petitioner has wholly failed to introduce any evidence in support of the allegation of undue influence. The will was not drawn by the principal beneficiary; she was not present when it was written; she had no knowledge of its contents until some days after its execution; nor does the evidence raise a suggestion even, that she solicited the execution of the will, or that she had anything whatever to do in procuring the provision therein in her favor, or that she used any deception, artifice or undue influence to prejudice the testatrix against her other children.

The allegation of mental incapacity is supported in the main by the testimony of the petitioner and her two daughters, Mary and Agnes; William Harvey, her brother, and his wife, Hannah. The testimony of some medical experts was introduced, based on some hypothetical questions propounded by the counsel for the contestant. The testimony of the witnesses who saw the decedent shortly before and after the execution of the will relates principally to the illness from which she was then suffering, and gives few facts upon which an opinion might properly be based as to the mental condition of the testator. For about a week prior to the 14th of December she had been ill with what was at first believed to be a severe cold; afterward an attack of grippe, which finally developed into pneumonia. The evidence of the contestant indicates that the decedent was very ill, breathed heavily, was subject to profuse perspiration, and was for a considerable time dull, and in a condition of stupor. To a very slight extent, however, does it show that on the day when the will was executed, and on the day when the codicil was executed, the testator was not possessed of the sound mind necessary to execute a will. Reference is made by one of the witnesses to the fact that at one time during the illness of the deceased, she called her son, William, Thomas; and at another time she spoke of the physician who was attending her, as an old devil. One of the witnesses testifies that she used

profane language with reference to her son Thomas, and that she had not been accustomed so to do prior to her illness. The witness did not fix the dates of these occurrences, nor, in view of all of the evidence in the case, are they of much significance as bearing upon the mental capacity of the testator. It is alleged she failed to recognize some of the members of the family and familiar acquaintances when they came into her room during her illness, and that it was necessary on two or three occasions to inform her who the person was who was present. This is not shown to have occurred many times, nor in view of the fact that the patient was lying down, sleeping a considerable part of the time, is it surprising that she should have failed promptly to recognize even those with whom she was well acquainted, especially so in view of the fact that she had for a length of time suffered from some disease of the eyes which impaired her vision. The witnesses called on behalf of the contestant may all be said to be interested except the medical experts. Hannah Daly and her daughters are members of the same family. William Harvey received no bequest under the will, and has therefore a direct interest in the proceeding to set it aside, in which interest his wife is, naturally, concerned.

The testimony in support of the will is largely of a different character. The will was drawn by Mr. Dubar, an attorney of this court, whose intelligence and integrity are undoubted. He had no interest in the estate nor in the disposal thereof made by the testator. The will was witnessed by Rev. J. M. Dunn, of whose church the deceased was a member, a gentleman of exceptional intelligence, and whose character is unquestionable, and by J. A. Silliman, a man of excellent business ability, whose reputation is beyond reproach. All of these witnesses affirm the mental soundness of the testator. Mr. Silliman died after the will was probated. His testimony was therefore unavailable under this petition, but he appeared before the register of wills at the time of probate and made oath to the testamentary capacity of the testator. The testimony of Mr. Dubar and of Father Dunn is clear and explicit as to the intention of the testator with reference to the disposal of her property. She gave all the directions with reference thereto. At the time of the execution of the will no person was present except Mr. Dubar and the testator. Mr. Dubar had no information from any

source as to the disposal which the testator desired to make of her property, except that which he derived from her. She told him who her children were, what the amount of her estate was, and what she desired to do with it. She gave the same information to Father Dunn, and also her reason for disposing of her property as she did. To quote his own language: "On the 14th I had a conversation with Mrs. Harvey on that subject. . . . . She told me she didn't intend to leave anything to William Harvey or his family; that she had already settled 'with Thomas and William; that Mrs. Daly was fairly well off, having a grown-up family able to take care of themselves: that she proposed to leave her estate to Mrs. Kelly, as she had a house full of orphan children. I asked her then about the amount of her property, and she told me she had about twenty-two thousand dollars in bonds and money. I asked her if she knew whether she had any Canadian Southern bonds, and she told me no, that she had Chicago and Northwestern." Q. "Did or did she not state where this property was, if in charge of any one? A. She told me Mr. DeLong, cashier of the Second National Bank, would give me all the information connected with it. She asked me to act as her executor. I told her I didn't care to act in that capacity, and I suggested the name of Mr. John Coots. She said: 'No, I would rather you would do it for me.'"

The evidence shows that the testator had given about twenty thousand dollars to each of her sons, William and Thomas; that her property was of almost the exact amount, and substantially of the kind and in the place stated by her to Father Dunn. To the testimony of the witnesses who testified as to the execution of the will can be added that of Dr. Barr, attending physician. Dr. Barr is justly esteemed one of the most competent, experienced and trustworthy physicians in this part of the state, and his testimony is entitled to very great weight, in view of his large experience. He testifies without hesitation as to the mental capacity of the testator, except during the last four or five days of her life. In answer to a question, he said: "Mrs. Harvey always appeared to me to be a very intelligent woman. . . . . I think Mrs. Harvey's ideas were better than most persons'." To the question whether Mrs. Harvey had an intelligent, comprehensive understanding of all her property and all

worldly effects, a just and full comprehension of the relation in which she stood to that property and to the parties named in her will, a reasonable comprehension of the purposes and effects of the will as actually drawn, the witness answered: " I should say yes."

Other witnesses were called who corroborated in a measure the testimony of the witnesses just referred to ; and indeed the testimony of Mrs. William Harvey, one of the witnesses for the contestant, is corroborative of the respondent.   She says that on the 23d of December, three days before the death of the testator, she heard a conversation between the decedent and Father Dunn, with reference to the manner in which she desired to have a part of her property disposed of, and that she wished to have $6,000 given to Mrs. Daly and $2,000 to Mrs. Daly's daughter, Mary.

The evidence in support of the testament greatly preponderates over that offered by the contestant, and leads to the conclusion that no such case is presented as would justify setting aside the will.   The testimony with reference to the use of stimulants by the decedent, and the use of opium or morphine as medicine, under the direction of the doctor, is of little significance, in view of the evidence as to the state of mind of the testator on the 14th and 18th days of December.   In Wilson v. Mitchell, 101 Pa. 502, the court defined the degree of capacity necessary to execute a will: " A man of sound mind and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it, and of the persons and objects he desires shall be the recipients of his bounty.   It is not necessary that he collect all these in one review.   If he understands in detail all that he is about, and chooses with reason and understanding between one disposition and another, it is sufficient for the making of a will.   If from any cause he is so enfeebled in mind as to be incapable of knowing the property he possesses, of appreciating the effect of any disposition made by him of it, and of understanding to whom he intends to bequeath it, he is without the requisite testamentary capacity. . . . . But his memory may be very imperfect; it may be greatly impaired by age or disease.   He may not be able at all times to

recollect the names, the persons or the families of those with whom he has been intimately acquainted ; may at times ask idle questions, and yet his understanding may be perfectly sound for many of the ordinary transactions of life.   He may not have sufficient strength of memory, and vigor of intellect, to make and to digest all the parts of a contract, and yet be competent to direct the distribution of his property by will. . . . Neither age, nor sickness, nor extreme distress or debility of body will affect the capacity to make a will, if sufficient intelligence remains.   The failure of memory is not sufficient to create the incapacity, unless it be total, or extend to his immediate family or property."

" Testamentary capacity is the normal condition of one of full age, and the affirmative is with him who undertakes to call it in question, and this affirmative must be established not in a doubtful, but in a positive manner : " Grubbs v. McDonald, 91 Pa. 236.

The clear, full and satisfactory evidence of the witnesses who testified as to what was said and done at the time of giving the instructions for the will, and the writing of it by the scrivener, supported by the testimony of the attending physician, requires precise, positive, and strong evidence to overcome it, and this is lacking.   The rule was held to be well settled in Herster v. Herster, 122 Pa. supra, that in an application for an issue, if the testimony is such that after a fair and impartial trial, resulting in a verdict against the proponent of the alleged will, the trial judge, after a careful review of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence, it cannot be said that a dispute within the meaning of the act has arisen.   To the same effect is Knauss's App., 114 Pa. 10.

Applying this rule to the case in hand, I have reached the conclusion, after careful examination of all the evidence, that no such case is made out as would support a verdict for the petitioner if an issue were granted.   The application for an issue is therefore refused at the costs of the petitioner.

*Error assigned* was decree of the court.

*Wm. J. Breene,* for appellant.—The question of undue influ-

ence is a question of fact, and like any other species of fraud, need not be proved by direct or patent evidence. Where, as in this case, one branch of the contestant's case rests upon undue influence of the daughter and principal beneficiary, aided and abetted by the executor, it is not easy to prove undue influence by open or direct proof, nor is it necessary to do so. It may be inferred from facts and circumstances as any other kind of fraud may be inferred : Tawney v. Lang, 76 Pa. 106 ; Yardley v. Cuthbertson, 108 Pa. 395 ; Boyd v. Boyd, 66 Pa. 283 ; Herster v. Herster, 116 Pa. 612 ; Palmer's Est., 24 W. N. C. 159 ; Reichenbach v. Ruddach, 127 Pa. 564 ; Delafield v. Parish, 25 N. Y. 95 ; Tyler v. Gardiner, 35 N. Y. 593 ; Herster v. Herster, 122 Pa. 250 ; 1 Jarman on Wills, 67 ; Harvey v. Sullens, 46 Mo. 147 ; Shaver v. McCarthy, 110 Pa. 344 ; Sharpless's Est., 134 Pa. 259.

*Julius Byles*, with him *Eugene Mackey*, for appellees, cited on the question of undue influence: Wilson v. Mitchell, 101 Pa. 495 ; Eddey's App., 109 Pa. 419 ; Cauffman v. Long, 82 Pa. 72 ; Pennsyl.'s App., 157 Pa. 465 ; Sharpless's Est., 134 Pa. 260 ; Knauss's App., 114 Pa. 20 ; Shreiner v. Shreiner, 178 Pa. 57 ; Eckert v. Flowry, 43 Pa. 46 ; Herster v. Herster, 122 Pa. 239 ; Trost v. Dingler, 118 Pa. 259 ; Tawney v. Long, 76 Pa. 107 ; Harrison's App., 100 Pa. 458 ; Douglass's Est., 162 Pa. 569 ; 25 Am. & Eng. Ency. of Law, 974 ; Shailer v. Bumstead, 99 Mass. 112 ; McCollough's Will, 35 Pitts. Leg. Jour. 169.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 10, 1897 :
This appeal is from the decree refusing to direct an issue devisavit vel non, for the purpose of determining :

" First : Whether the testatrix, Mary Harvey, was of sound and disposing mind, memory and understanding at the time of the execution of the will in question ; " and

" Second : Whether said will was not procured by undue influence."

In the court below, the really pertinent inquiry was whether, upon the testimony of the respective parties, a serious dispute had arisen as to either of said questions,—such a dispute as should have been submitted to and passed upon by a jury. In rightly determining such questions there is perhaps no safer or

more reliable test than this; if the testimony is such that, after a fair and impartial trial resulting in a verdict against the proponents of a will, the trial judge,—upon a careful review of all the testimony,—would feel constrained to set aside the verdict, as contrary to the manifest weight of the evidence, it cannot be said that a dispute, in the meaning of the act, has arisen. On the other hand, if the state of the evidence is such that he would not feel constrained to set aside the verdict, the dispute should be considered substantial, and an issue should be directed: Knauss's Appeal, 114 Pa. 10, 20; Herster v. Herster, 122 Pa. 239.

After a painstaking review of the nearly three hundred printed pages of testimony taken on the hearing, the learned president of the orphans' court in a clear and convincing opinion, came to the conclusion that, according to the test aforesaid, the evidence was insufficient to justify him in directing an issue as to either of said questions; and a careful consideration of the testimony, in connection with the specifications of error, has convinced us that there is no substantial error in his conclusion.

As to the question of testamentary capacity, the testimony in favor of the proponents of the will is not only distinct and positive, but practically unimpeached. On the question of undue influence, there is some testimony, tending to show facts and circumstances which, in themselves, might be calculated to excite suspicion, but when viewed in the light of the undisputed evidence, these circumstances, etc., furnish no reasonable ground even for suspicion that undue influence of any kind was operative in the making or execution of the will.

A detailed consideration of the testimony is wholly unnecessary. Nor is there anything in either of the specifications of error that requires extended comment. We are all of opinion that the issue was rightly refused, and that the decree should not be disturbed.

Decree affirmed and appeal dismissed at appellant's costs.